NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO F.S.

No. 1 CA-JV 23-0081
FILED 12-12-2023

---

Appeal from the Superior Court in Maricopa County
No. JD40842
The Honorable Julie Ann Mata, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant Tiffany S.*

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant Joe S.*

Arizona Attorney General's Office, Phoenix
By Jennifer L. Thorson
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Brian Y. Furuya joined.

---

**B A I L E Y,** Judge:

**¶1**　　　　In this consolidated appeal, Tiffany S. ("Mother") and Joe S.[1] ("Father") appeal the termination of their parental rights to F.S. ("Daughter"). For the following reasons, we affirm the order terminating Mother's and Father's parental rights to Daughter, but we vacate the finding that the Department of Child Services ("DCS") proved the chronic substance abuse ground against Father.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　"We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citation omitted).

**¶3**　　　　Mother and Father are the biological parents of Daughter, born in February 2021. In April 2021, Father refused to give Daughter to Mother because Mother was intoxicated. Mother became argumentative and was arrested. Three days later, Daughter was present when Mother hit Father, leaving Father with "blood coming from his right ear and a 3-inch scratch on his upper right chest." The police arrested Mother and notified DCS. Father retained custody of Daughter.

**¶4**　　　　A few days later, Mother and Father had another argument, during which Mother damaged Father's phone. Mother left with Daughter, but she returned while the police were interviewing Father. While holding Daughter in a car seat, Mother began yelling at Father. Mother refused police instructions to give Daughter to Father and paced around outside for forty minutes, exposing Daughter to hot weather, which caused Daughter's skin to turn red. Mother used Daughter as a "shield" when the police arrested Mother. After the arrest, the police notified DCS.

**¶5**　　　　DCS took custody of Daughter and filed a dependency petition based on Mother's domestic violence and substance abuse, and

---

[1] Father is also known as Jose S.

Father's failure to protect Daughter from Mother. In September 2021, the parents pled no contest, and the superior court adjudicated Daughter dependent and approved a family reunification case plan.

¶6 DCS offered Mother and Father drug testing, substance abuse treatment, supervised visitation, and bus passes, and asked them to self-refer to domestic violence counseling.

¶7 Mother had sporadic periods of sobriety, but she repeatedly went months without testing, she failed to call in to the testing center over 500 times, and she tested positive for substances nineteen times between May 2021 and March 10, 2023. Her positive tests included alcohol and THC in May 2021 and cocaine in December 2021. Mother also disclosed that she used cocaine and marijuana heavily and that she often drank alcohol until she blacked out. Mother was diagnosed with moderate cannabis use disorder, severe alcohol use disorder, and moderate cocaine use disorder.

¶8 Mother started, but did not complete, multiple substance abuse treatment programs. More than a year after DCS removed Daughter from Mother's care, Mother started another program and completed some classes, but in February 2023, she was hospitalized for intoxication. About a week later, Mother smuggled alcohol into the treatment facility after "meeting with her boyfriend/child's father at the gate,"[2] and she left the program.

¶9 Father did not initially provide a urine sample, but he tested positive via a hair follicle test for methamphetamine, amphetamine, and cocaine in May 2021, cocaine and methamphetamine in June 2022, and cocaine in February 2023. Father did not complete his first substance abuse program. DCS re-referred Father in July 2022, and he engaged in substance abuse treatment until his February 2023 positive drug test.

¶10 In June 2022, the court approved changing the case plan from reunification to severance and adoption. About a month later, DCS petitioned to terminate Mother's parental rights based on her history of chronic abuse of drugs and/or alcohol, and on six- and nine-month out-of-home placement grounds, and Father's parental rights on six- and nine-month out-of-home placement grounds. In January 2023, DCS moved to add a fifteen-month out-of-home placement ground against Mother and Father. The superior court allowed the amendment but granted Mother's

---

[2] Mother and Father denied that Father provided Mother with alcohol.

and Father's motion to continue the hearing. The court held a two-day contested severance hearing in February and March 2023.

¶11        At the hearing, the DCS case manager testified about the parents' ongoing substance abuse issues. DCS also had ongoing domestic violence concerns because Mother and Father had only recently started domestic violence counseling, Father still communicated with Mother, and despite discussions with DCS about it, Father did not obtain an order of protection against Mother.

¶12        Mother testified that she was unemployed but living with friends, and Daughter could live with her. Mother also testified that she completed an intake appointment for domestic violence counseling, and she admitted that her alcohol use contributed to the domestic violence.[3]

¶13        Father testified that he did not believe Mother's substance abuse was a current safety concern, and he considered Mother a safe parent. Father also testified that he had completed four domestic violence counseling sessions, was employed, had identified childcare for Daughter, and planned to move to a new apartment because Daughter could not live with him at his current residence.

¶14        The superior court terminated Mother's and Father's parental rights, finding termination was in Daughter's best interests and that DCS had offered clear and convincing evidence to terminate Mother's and Father's rights on the substance abuse ground, six- and nine-month out-of-home placement grounds, and fifteen-month out-of-home placement ground.

¶15        We have jurisdiction over Mother's and Father's timely appeals under Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1), and Rule 601 of the Arizona Rules of Procedure for the Juvenile Court.

---

[3] The superior court questioned whether Mother was sober during the contested severance hearing and noted in its ruling that, "[w]hile testifying Mother giggled inappropriately, and at times her speech was slurred. . . . The Court inquired why her behavior was so markedly different than the first day of trial, and all the hearings leading up to it. Mother stared blankly and then asked the Court if the question posed was directed at her."

**DISCUSSION**

I.      Standard of Review

**¶16**          To terminate parental rights, a court must find clear and convincing evidence of at least one statutory ground in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination is in the child's best interests.[4]  *See Michael J.*, 196 Ariz. at 249, ¶ 12; *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005).  Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted), we will accept its factual findings if supported by reasonable evidence and inferences, and we will affirm the order terminating parental rights unless it is clearly erroneous, *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016); *accord Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478–79, ¶¶ 30–31 (2023) (clarifying the standard of review).

II.     Mother's Appeal

**¶17**          Mother argues that substantial evidence did not support each of the statutory grounds.

**¶18**          A court may terminate a parent's rights under A.R.S. § 8-533(B)(3) when: (1) the "parent has a history of chronic abuse of controlled substances or alcohol;" (2) the "parent is unable to discharge parental responsibilities because of [her] chronic abuse of controlled substances or alcohol;" and (3) "there are reasonable grounds to believe that the condition will continue for a prolonged and indeterminate period."  *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 (App. 2010).[5]

**¶19**          Mother concedes that she "has a history of substance use" and "[l]ike many Americans, [she] uses legal substances, such as marijuana and alcohol," but argues that the superior court erred in finding substance abuse prevented her from discharging her parental responsibilities because "[h]er

---

[4] Mother and Father do not challenge the superior court's finding that termination was in Daughter's best interests, so we do not address it.  *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 13 (2000).

[5] Mother does not challenge DCS's reunification efforts, so we do not address the issue further.  *See Raymond F.*, 224 Ariz. at 377, ¶ 15 n.2.

mere use of those substances does not prove, by clear and convincing evidence, that she is an incapable parent."

¶20        The superior court did not terminate Mother's rights based on Mother's "mere use of those substances." The court found that "Mother is violent when she drinks and is not safe," "Mother is only able to put the child's needs above her own when she is sober," and Mother had not shown "an awareness that substance abuse and domestic violence prevent [her] from fulfilling [her] individual parental responsibilities."

¶21        A court may find a parent is incapable of discharging her parental responsibilities when the parent, because of chronic substance or alcohol abuse, fails to make appropriate decisions and ensure a safe home for her child. *See Raymond F.*, 224 Ariz. at 377–78, ¶¶ 19-23. DCS removed Daughter from Mother's custody because she engaged in multiple acts of domestic violence in Daughter's presence. According to a DCS report, Mother admitted she was under the influence of alcohol during those incidents. Finally, Mother testified that her alcohol use contributed to the domestic violence.

¶22        Mother also argues that the record lacked substantial evidence that her substance abuse would prevent her from discharging her parental responsibilities "at the present or the future."

¶23        DCS conditioned Daughter's return on Mother providing a "home environment that is consistent and free of any substances." Mother had almost two years to address her substance abuse issues. But Mother continued to abuse substances including when, just after the first hearing day, she became intoxicated and had to be hospitalized, and days later, signed herself out of her treatment program after she was caught smuggling alcohol into the facility. *See id.* at 379, ¶ 29 (A parent's failure to remedy substance abuse, "despite knowing the loss of [her] children was imminent, is evidence [she] has not overcome [her] dependence on drugs and alcohol."). Mother argues that she "tested negative for substances at various times throughout the dependency proceedings." But "temporary abstinence from drugs and alcohol does not outweigh [her] significant history of abuse or [her] consistent inability to abstain during this case." *Id.*

¶24        Thus, reasonable evidence supports the finding that Mother's substance abuse rendered her unable to discharge her parental responsibilities and that her condition was likely to continue. "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims

pertaining to the other grounds." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) (citations omitted). Thus, we do not address Mother's arguments against the out-of-home placement grounds.

III.    Father's Appeal

A.  Chronic Abuse of Dangerous Drugs or Controlled Substances

**¶25**          Father argues the superior court erred because it found DCS proved the substance abuse ground when DCS did not allege that ground against Father. DCS concedes that the court erred. We accept DCS's concession.[6]

B.  Fifteen-Month Out-Of-Home Placement Ground

**¶26**          Father also argues the superior court erred because substantial evidence did not support terminating his parental rights on the fifteen-month out-of-home placement ground.

**¶27**          Under A.R.S. § 8-533(B)(8)(c), a court may terminate a parent's rights when: (1) "[t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement," (2) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement," and (3) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." The court must also find that DCS made a "diligent effort to provide appropriate reunification services." A.R.S. § 8-533(B)(8).

**¶28**          Father does not challenge the superior court's finding that Daughter was in an out-of-home placement for fifteen months. Instead, he argues insufficient evidence supported the superior court's finding that he could not remedy the circumstances causing Daughter's out-of-home placement.

---

[6] Citing *Carolina H. v. Arizona Department of Economic Security*, 232 Ariz. 569 (App. 2013), Father argues we should reverse because the superior court violated his right to due process and fundamental liberty interest in parenting Daughter by independently adding the substance abuse ground. In *Carolina H.*, the superior court found that a child was dependent even though it concluded none of the statutory grounds had been proven. *Id.* at 571, ¶¶ 8–9. That is not the case here because the superior court also terminated Father's parental rights on grounds pled by DCS.

**¶29** "Circumstances" means "'those circumstances existing at the time of the severance' that prevent a parent from being able to appropriately provide for his or her children." *Jordan C.*, 223 Ariz. at 96, ¶ 31 n.14 (citations omitted). Father did not consistently participate in substance abuse treatment or drug testing, and he tested positive for substances in May 2021, June 2022, and February 2023. Further, after hearing evidence that Mother had unresolved substance abuse issues, Father testified that Mother was a safe parent and her substance abuse was not a current safety concern. Finally, Father did not start domestic violence counseling until just before the contested severance hearing. Thus, reasonable evidence supports the finding that Father was unable to remedy the substance abuse and domestic violence concerns causing Daughter's out-of-home placement.

**¶30** Father also argues that the superior court erred because "there was insufficient evidence to show what parenting Father was unable to provide to the child or what parenting functions Father was unable to perform." The superior court found that Father made insufficient improvement in prioritizing "the child's safety above Mother's desires and requests" and concluded that Father would be unable to exercise parental care and control in the future.

**¶31** DCS removed Daughter from Father's care because he failed to protect her from Mother's domestic violence, but Father continued to communicate with Mother, did not obtain an order of protection against her, and did not start domestic violence counseling until February 2023. The superior court also pointed to evidence that Father provided alcohol to Mother while Mother was in a treatment facility. Mother and Father denied that Father did so, but "[t]he resolution of such conflicts in the evidence is uniquely the province of the juvenile court as the trier of fact," so we defer to the superior court's judgment. *Jesus M.*, 203 Ariz. at 282, ¶ 12 (citations omitted). Finally, Father testified that he did not find Mother's substance abuse a current safety concern and that he believed Mother was a safe parent.

**¶32** Father points to evidence showing that he made progress and argues that the court did not give this evidence "proper weight." The superior court considered Father's progress, but found it was insufficient, and we do not reweigh evidence. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018).

**¶33** Thus, reasonable evidence supports the superior court's order terminating Father's parental rights on the fifteen-month out-of-home

placement ground.  We therefore do not address the six- and nine-month termination grounds.  *See Jesus M.*, 203 Ariz. at 280, ¶ 3.

### C.  Reunification Services

**¶34**          Father argues that DCS did not make diligent efforts to provide him with reunification services because Father was "unable to receive [domestic violence counseling] from any agency he contacted" and "DCS did not intervene and help Father get the domestic violence counseling services until the end of the case."

**¶35**          DCS must provide a parent with the "time and opportunity to participate in programs designed to help [him] become an effective parent," but DCS need not provide "every conceivable service or [] ensure that a parent participates in each service it offers."  *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994) (citation omitted).

**¶36**          DCS offered Father substance abuse treatment, random urinalysis testing, bus passes, and supervised visitation.  DCS also asked Father to self-refer to domestic violence counseling.  Citing *Mary Ellen C. v. Arizona Department of Economic Security*, 193 Ariz. 185 (App. 1999), Father argues DCS needed to provide domestic violence counseling because DCS recommended it.  *Mary Ellen C.* held that Child Protective Services—DCS's predecessor—did not make reasonable efforts to offer reunification services because it failed to offer a parent significant services for almost a year after removing a child, and encouraged the parent to self-refer to, but did not provide, psychiatric services that its consulting expert recommended.  *Id.* at 192, ¶¶ 35, 37.  Here, the DCS case manager testified that she offered to help Father find domestic violence counseling, but Father responded that he could find it on his own.  Further, Father's obtaining domestic violence counseling was discussed at a Team Decision Meeting in May 2021.  Yet Father waited until January 2023 to inform the court and DCS that he could not find a program.  Then, DCS immediately referred Father to a program, and Father finally began attending counseling.  Because the delay in beginning domestic violence counseling is attributable to Father's inaction, the superior court did not err in finding DCS made a diligent effort to provide him with reunification services.

### D.  Less-Restrictive Placement

**¶37**          Father also states that he has a Fourteenth Amendment and statutory right to parent his child and argues that the superior court erred because A.R.S. § 1-601 required "DCS to consider a less restrictive placement such as [a] guardianship as an alternative to severance."  Father

did not present this argument to the superior court, so to prevail he must show fundamental error. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 447–48, ¶¶ 37–38 (2018). A court may establish a permanent guardianship only when "[t]he likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interests." A.R.S. § 8-871(A)(4). Here, the superior court found that Daughter's foster family intended to proceed with adoption and that termination of parental rights was in her best interests. Thus, the court did not fundamentally err because it could not have established a guardianship.

## CONCLUSION

**¶38** The superior court's order terminating Mother's and Father's parental rights to Daughter is affirmed, but we vacate the superior court's finding that DCS proved the chronic substance abuse ground against Father.



AMY M. WOOD • Clerk of the Court
FILED: AA